## Montgomery Ward Co., Inc. v. Neil Horgan

[448 A.2d 151]

No. 413-80

Present: **Barney, C.J., Billings, Hill, Underwood and Peck, JJ.**

Opinion Filed June 8, 1982

316

*Sharon Green,* Morrisville, for Plaintiff.

*Neil Horgan,* pro se, Morrisville, for Defendant.

**Barney, C.J.** The defendant appeals pro se a judgment against him in small claims court in the amount of $295.68. The plaintiff, a nationally prominent retailer, appeared below with counsel to press a claim of $395.68. The defendant, representing himself, denied liability on the ground that the furniture he had purchased was defective.

The facts which gave rise to this controversy are not unusual. In 1977 the defendant purchased two swivel rockers and a couch out of the company's mail order catalogue on a credit card account. The purchases totalled $410.00. The furniture was subsequently delivered from a local catalogue store.

The defendant claims that approximately two months after he purchased the furniture he began to have trouble. First the

material covering one of the rockers gave way in a manner that could not be repaired by simple sewing. Next one of the main back supports on the second rocker broke. Finally, he alleges that poor construction and design caused unusual wear and tear on a seat cushion of the couch, causing it to rip.

According to the defendant he immediately took action to notify the company of the problems he was having. He testified that he wrote the company "a couple of times" to complain about the furniture, and also that he placed at least one call to the company's office in New York. On appeal it appears that his reference was to the plaintiff's credit center in Glens Falls. He reported receiving telephone calls instructing him to keep mailing in his payments, and telling him that the company would "get somebody up" to look at the merchandise, but nobody ever came. The defendant further testified that he had contacted the New York office, because "that's where I did all my payments and everything else, so naturally I went there." Eventually he also began writing notes across the payment stubs he returned with his payments, but still there was no response.

The company's representative testified that neither the company's Glens Falls credit center nor the local catalogue store in Vermont had any record of a complaint being made by the defendant concerning the merchandise. He stated that the receipts on which the defendant claimed to have written his later complaints would have gone to central mailing centers in Albany or Baltimore, and that they would have been destroyed once the payments were recorded. The representative indicated that the company had attempted to negotiate a settlement of the account, but that the defendant had failed to respond to its letters. The defendant's position was that he had already paid more than the merchandise was worth and was not interested in paying an additional sum in settlement.

The trial court found that the defendant had purchased the furniture directly out of the plaintiff's mail order catalogue without any contact with the local catalogue store. It apparently believed all of the defendant's testimony, since it further found that defects had been identified in the merchandise after purchase, and that the defendant had corresponded with the plaintiff regarding those defects. It concluded that the de-

fendant had not received an adequate response to his complaints,

The trial court also found that the defendant had stopped paying on his account, and concluded that while he was entitled to deduct $100.00 from the amount due and owing, he was nevertheless liable for $295.68 plus interest. There is no indication in the record how the $100.00 figure was arrived at, or whether it was simply an arbitrary amount that seemed reasonable to the court.

The defendant then wrote the court a letter which was treated as a motion for new trial. In it he mentioned for the first time the federal Truth in Lending Act, which he alleged governed the dispute. He also raised an entirely new claim that the plaintiff had acted illegally by taking collection action after it had been notified of the dispute and before it had answered his inquiry, but that claim not having even been suggested below will not be considered on appeal. *Alexander v. Dupuis,* 140 Vt. 122, 125, 435 A.2d 693, 695 (1981).

The plaintiff responded that the defendant had never contacted the local catalogue store or tried to return the merchandise, and had not proved when the defect was first discovered or when the plaintiff's Glens Falls office was first contacted about it. It further argued that the defendant had not proved the amount of damage, or why, if the merchandise was unuseable, he had continued to make semi-regular payments for some time. Thus, it concluded, there was no new evidence to warrant a review of the court's findings and conclusions. Apparently the trial court agreed with the plaintiff, as no new hearing was held and the findings, conclusions and order went unamended.

On appeal the defendant presses the legitimacy of his action. He states, and the trial court found, that he found defects in the merchandise, that he notified the plaintiff of the problem before he stopped payment on his account, and that only after the plaintiff failed to adequately respond to his complaint did he cease payment. The plaintiff reiterates its position below that the notice was not correctly given, and that the defendant must prove damages in order for judgment to be entered in his favor, which it claims he did not do.

Regulation Z of the Federal Truth in Lending Act, 15 U.S.C. §§ 1601–1693r, provides at 12 C.F.R. § 226.13 (i) that:

(1) When a person who provides property or services fails to satisfactorily resolve a dispute as to property or services purchased by use of a credit card in connection with a consumer credit transaction, the cardholder may assert all claims . . . and defenses arising out of the transaction and relating to such failure against the card issuer, and the cardholder may withhold payment up to the amount of credit outstanding with respect to the property or services which gave rise to the dispute and any finance charges, late payment charges, or other charges imposed on that amount if:

(i) The cardholder has made a good faith attempt to obtain satisfactory resolution of the disagreement or problem relating to the transaction from the person honoring the credit card. . . .

We believe that, on the facts found by the trial court and under this federal regulation, the defendant was within his rights in withholding payment on his account. The trial court's conclusion that "[t]he Defendant cannot simply stop paying for goods he received," was, under the circumstances, in error.

██ ██ It is true that the Truth in Lending Act was not expressly before the trial court at the time its decision was rendered, but we believe that in a small claims action of this kind, where all the relevant facts and issues are fairly raised below, it is incumbent upon the court to apply the appropriate law, wherever it may be found.

██ It may be that the defendant could have provided the plaintiff with better notice of his dissatisfaction with the property purchased, but the evidence amply allowed the trial court to find that notice had been given and received, and that a good faith attempt to resolve the problem had been made by the defendant. Similarly, while it is true that the defendant did not prove a specific amount of damages, he was entitled under the regulation to withhold payment up to the amount of credit outstanding with respect to the property which gave rise to the dispute, and was under no obligation

to estimate what portion of that credit was a fair equivalent of the defects he found.

██ Presented as a defense to the plaintiff's debt collection action, the defendant's Truth in Lending-based claim that the merchandise was shoddy, and that he was therefore entitled to withhold further payment on his account, is best considered as a demand for recoupment. Cf. *Household Consumer Discount Co.* v. *Vespaziani,* 490 Pa. 209, 415 A.2d 689 (1980); *Household Finance Corp.* v. *Pugh,* 288 N.W.2d 701 (Minn. 1980); *Continental Acceptance Corp.* v. *Rivera,* 50 Ohio App. 2d 338, 363 N.E.2d 772 (1976). This seems to have been what the trial court had in mind when it concluded that the defendant could deduct $100.00 from the full balance due on the account. However, there was no evidence to support its conclusion that the defendant sustained $100.00 worth of damage, or that, if he did, this is the proper measure of his recoupment in view of the plaintiff's failure to respond to his complaints. That being the case, the judgment cannot stand.

*Reversed and remanded for new hearing.*

**Billings, J.,** dissenting. Although the majority opinion relies on the defendant's defense of the federal Truth in Lending Act, this Act was never specifically pled or even brought to the attention of the trial court until after the hearing was concluded and judgment was entered. It was first mentioned in an informal letter the defendant wrote to the trial court following the filing of the judgment order.

D.C.C.R. 80.3 governs small claims procedure, and D.C.C.R. 80.3(e) provides that the defendant shall state orally or in writing the defense to the claim. Here the defendant failed to do so until after judgment. A trial court will not be put in error for issues not raised below. *Alexander* v. *Dupuis,* 140 Vt. 122, 125, 435 A.2d 693, 695 (1981); *Cameron* v. *Cameron,* 137 Vt. 12, 15, 398 A.2d 294, 296 (1979).

Defendant's subsequent informal and unsworn letter was treated as a motion for a new trial, D.C.C.R. 59, and was denied without a hearing. The defendant, in the motion, offered no new evidence or any affidavits. A timely motion for a new

trial pursuant to D.C.C.R. 59 is addressed to the sound discretion of the trial court, the burden of showing an abuse of discretion is on the movant, and this Court will indulge in every reasonable presumption in favor of the trial court's decision. *Meacham* v. *Kawasaki Motors Corp.*, 139 Vt. 44, 47, 421 A.2d 1299, 1301 (1980); *O'Neil* v. *Buchanan*, 136 Vt. 331, 333, 388 A.2d 431, 433 (1978). No abuse of discretion was shown on the record before us.

Although the majority opinion is correct in stating that there was no evidence to support the deduction of $100 from the amount found due by the trial court to the plaintiff, this was never appealed by either the plaintiff or the defendant and therefore is not for appellate review.

I would affirm the judgment of the trial court. I am authorized to state that Mr. Justice Peck concurs in this dissent.